UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

FILED
APR 23 2009
[signature] CLERK

| DLORAH, INC., | ) | CIV. 08-5091-RHB |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | ORDER |
| NAU HOLDINGS, LLC, and HORNY TOAD ACTIVEWEAR, INC., | ) | |
| Defendants. | ) | |

Plaintiff brings this action alleging trademark infringement and violations of the Lanham Act. Plaintiff seeks damages and injunctive relief. The Court has original jurisdiction over the subject matter of the Lanham Act claims pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a), and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367. Docket #1.

Currently before the Court is defendants' motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). In the alternative, defendants request that the matter be transferred to the United States District Court for the District of Colorado, or that the Court stay the action pending resolution of the parallel matter currently proceeding in the District of Colorado. Docket #7.

## BACKGROUND

Dlorah, Inc. (Dlorah), is a South Dakota corporation doing business as National American University, which offers higher-education services online and at sixteen brick-and-mortar sites across the United States. Dlorah owns registered trademarks in "NAU" and "NATIONAL AMERICAN UNIVERSITY" in connection with educational services. Dlorah sells apparel and merchandise bearing those trademarks to the public.

Nau Holdings, LLC (Nau Holdings), is a clothing company located in Portland, Oregon, and incorporated in Delaware. Nau Holdings owns four trademark applications for the marks "NAU" and "NAU (stylized)" that are currently pending before the U.S. Patent and Trademark Office. Nau Holdings sells clothing bearing these marks at retail establishments and via the Internet.

Horny Toad Activewear, Inc. (Horny Toad), is a clothing company located in Santa Barbara, California, and incorporated in Delaware. Horny Toad is a parent company to Nau Holdings. Horny Toad established Nau Holdings when it purchased the assets of a predecessor clothing company, Nau, Inc., which began selling NAU-branded items in 2005 but went out of business in 2008. Nau, Inc. was the original applicant of the four trademark applications currently owned by Nau Holdings. Nau, Inc. also registered the Internet domain name "nau.com," which was also transferred to Nau Holdings in the 2008 sale.

## DISCUSSION

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must state sufficient facts in the complaint to support a reasonable inference that [defendants] can be subjected to jurisdiction within the state." Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004). "The party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction." Epps v. Stewart Information Services Corp., 327 F.3d 642, 647 (8th Cir. 2003). In the absence of an evidentiary hearing, plaintiff need only make a prima facie showing of jurisdiction to survive a motion to dismiss. Id. However, at trial, plaintiff must prove by a preponderance of the evidence that jurisdiction is proper. Id.

"A federal court in a diversity action may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and the Due Process Clause." Dever, 327 F.3d at 1073. Because South Dakota has construed its long-arm statute to confer jurisdiction to the fullest extent permitted by the Constitution, the Court's inquiry is limited to the question of whether or not exercise of personal jurisdiction comports with due process. Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir. 1994) (citations omitted).

"Due process requires 'minimum contacts' between a nonresident defendant and the forum state, such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Steinbuch v. Cutler, 518 F.3d 580, 585-86 (8th Cir. 2008)

(citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980)). "The minimum contacts inquiry focuses on whether the defendant purposely availed itself of the privilege of conducting activities within the forum state and thereby invoked the benefits and protections of its laws." Id. at 586 (citing Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

"The Supreme Court has recognized two theories for evaluating personal jurisdiction: general and specific jurisdiction." Id. (citing Helicopteros Nactionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984)). General jurisdiction exists if a defendant has carried on in the forum state a "continuous and systematic . . . part of its general business; in such circumstances the alleged injury need not have any connection with the forum state." Id. (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 779 (1984)). "Specific jurisdiction on the other hand is appropriate only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relative to those activities." Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).

The Eighth Circuit has developed a five-factor test to evaluate the sufficiency of a defendant's contacts: "1) the nature and quality of the defendant's contacts with the forum state; 2) the quantity of such contacts; 3) the relation of the cause of action to the contacts; 4) the interests of the forum state in providing a forum for its residents; and 5) the convenience of the parties." Id. The first three factors are of primary importance. Id.

A.  **Corporate Veil**

As a general rule under Eighth Circuit law, Nau Holdings and Horny Toad must be evaluated separately for purposes of determining whether or not either company is subject to personal jurisdiction in South Dakota. Epps, 327 F.3d at 648-49; Steinbuch, 518 F.3d at 589. Plaintiff may not disregard the distinct corporate entity structure unless it can demonstrate that one company "is so organized and controlled and its affairs are so conducted that it is, in fact, a mere instrumentality or adjunct of another corporation." Epps, 327 F.3d at 649. In such a case, establishment of personal jurisdiction is contingent on the plaintiff's ability to pierce the corporate veil. Id.

In the present case, plaintiff has made no effort to pierce the corporate veil. Instead, plaintiff contends that the distinction between Horny Toad and Nau Holdings is irrelevant because Horny Toad is the owner of the nau.com domain. Therefore, according to plaintiff, independent grounds exist to keep Horny Toad as a defendant in this matter, as Horny Toad is independently charged with violations of the Lanham Act. Docket #24 at 4.

Notably, plaintiff's allegation that Horny Toad owns the nau.com domain does not appear in plaintiff's complaint, and is not verified in any way. The only support for this allegation is an affidavit submitted by Heather Kliebenstein, who is counsel for plaintiff. Ms. Kliebenstein's affidavit contains a "WHOIS" record for nau.com. Docket #26-6. The WHOIS record identifies Horny Toad as the registrant organization for the nau.com domain, and lists Santa Barbara, California (where Horny Toad is located), as the registrant

city. Id. Unfortunately for plaintiff, WHOIS records merely provide contact information for the administrator or registrant of a domain name, and have no bearing on ownership. Although the Eighth Circuit has yet to weigh in on this issue, courts in other circuits have. In Express Media Group, LLC v. Express Corp., 2007 WL 1394163 at *4 (N.D. Cal. 2007), a California district court stated that WHOIS records "are not the equivalent of statutorily-created title systems" but rather are "privately-maintained systems for providing contact information and keeping records for domain names." See also Atlas Copco AB v. Atlascopcoiran.com, 533 F.Supp.2d 610, 613, n.1 (E.D. Va 2008) (holding that a party other than that listed in the WHOIS record was owner of the domain name); Silverstein v. E360Insight, LLC, 2008 WL 1995217 at *12, n.3 (C.D. Cal 2008) (stating that WHOIS information refers to the registrant's contact information).

Defendants explain that the WHOIS record identifies Horny Toad as the registrant and contact for the nau.com domain because Jeremy Mew of Horny Toad performs computer support for both Horny Toad and Nau Holdings. The Court finds this to be a reasonable explanation. Moreover, Nau Holdings explicitly claims ownership of the nau.com domain. Docket #9-3 at ¶ 7-8. Plaintiff has supplied nothing other than the WHOIS record to refute this point. Based on this information, and the inconclusive nature of WHOIS reports, the Court finds no basis for plaintiff's assertion that Horny Toad owns the nau.com domain.

Plaintiff also claims that the predecessor to Nau Holdings, Nau, Inc., admitted to the existence of contacts in South Dakota, and argues that those admitted contacts should be imputed to Nau Holdings. The Court does not agree. Under South Dakota law, corporate successor liability may be imposed only "1) when the purchasing corporation expressly agrees to assume the selling corporation's liability; 2) if the transaction amounts to a consolidation or merger; 3) when the purchaser corporation is a mere continuation of the seller corporation; or 4) when the transaction is entered into fraudulently to escape liability for obligations." Global Polymer Industries, Inc. v. C &A Plus, Inc., 2006 WL 3743845 at *2 (D.S.D. 2006) (citing Hamaker v. Kenwel-Jackson Mach., Inc., 387 N.W.2d 515, 518 (S.D. 1986)). Plaintiff makes nothing more than conclusory allegations regarding these four factors, and those allegations are entirely unsupported by facts, even alleged facts. Conversely, Nau Holdings plainly states that it only purchased selected assets of Nau, Inc., not the entire company. Docket #42 at ¶ 5. Nau Holdings makes no admission regarding any of the four factors listed above. Based on this record, the Court finds no good reason to impute Nau, Inc.'s admissions to Nau Holdings.

It appears to the Court that Nau Holdings and Horny Toad are separate companies. Docket #22-2 at ¶ 6. Horny Toad and Nau Holdings maintain separate books, separate records, separate principal offices, and separate bank accounts. Id. at ¶ 7. Horny Toad does not control the day-to-day operations of Nau Holdings. Id. at ¶ 8. Horny Toad does not exercise day-to-day control over Nau Holdings' use of the NAU marks, its use of the

7

domain name nau.com, or its sales and marketing activities. Id. at ¶ 9. Finally, Horny Toad does not sell any items bearing the NAU marks in South Dakota or through Horny Toad's own website at hornytoad.com. Id. at ¶ 11. Plaintiff has done nothing to rebut these claims, nor has plaintiff made any attempt to pierce the corporate veil. As a result, there is no reason to deviate from the general rule that requires the Court to evaluate Horny Toad and Nau Holdings separately when determining if personal jurisdiction exists over either company.

B.    **General Jurisdiction**

As previously noted, general jurisdiction exists in a particular forum only when a party has maintained "continuous and systematic" conduct in that forum. Steinbuch, 518 F.3d at 586. The inquiry focuses on the general presence of defendants in the forum. Id. at 587. "Where general jurisdiction exists, the defendant can be sued in the state on any claim, arising anywhere," even if the alleged injury is unrelated to the defendant's contacts with the state. Adams v. Riverview Healthcare Association, 2003 WL 1456442 at *2 (D.N.D. 2003). "Because of this broad basis for jurisdiction, a much higher level of contacts is required; therefore, the exercise of general jurisdiction is typically limited to large companies doing a large amount of business on a regular basis." Id. See also Dever, 380 F.3d at 1074-76.

Nau Holdings is not registered to do business in South Dakota and has no offices, employees, registered agents, bank accounts, financial holdings or real or personal property

8

in South Dakota. Docket #9-3 at ¶ 4. Nau Holdings does not own or manage any stores in South Dakota. Id. at ¶ 6. Nau Holdings does not maintain a business presence in South Dakota, and has not actively advertised in South Dakota or focused advertising on South Dakota residents. Id. at ¶ 5, 11. Nau Holdings has not conducted continuous and systematic business conduct in South Dakota. There is therefore no basis to exert general jurisdiction over Nau Holdings in South Dakota.

Horny Toad is not registered to do business in South Dakota and has no offices, employees, registered agents, bank accounts, financial holdings, or real or personal property in South Dakota. Docket #22-2 at ¶ 4. Horny Toad does not own or manage any stores in South Dakota. Id. at ¶ 5. Horny Toad products are sold in three retail outlets in South Dakota. Docket #25. However, Horny Toad does not sell any goods bearing NAU marks in South Dakota or through its own website. Docket #22-2 at ¶ 11. Under Eighth Circuit law, the fact that Horny Toad goods are sold in South Dakota merely constitutes "[s]imple commercial contacts" which, when unrelated to plaintiff's trademark infringement claims, "are insufficient to establish personal jurisdiction." Burlington Industries, Inc. v. Maples Industries, Inc., 97 F.3d 1100, 1103 (8th Cir. 1996). As a result, there is no basis to find that Horny Toad is subject to general jurisdiction in South Dakota.

C. **Specific Jurisdiction**

As previously stated, specific jurisdiction is appropriate only if the injury giving rise to the underlying lawsuit "occurred within or had some connection to the forum state,

9

meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relative to those activities." Steinbuch, 518 F.3d at 586 (citations omitted). Horny Toad does not sell any goods bearing the NAU marks in South Dakota or through Horny Toad's website. Docket #22-2 at ¶ 11. Thus, plaintiff's claims do not arise from Horny Toad's activities in South Dakota, and as a result there is no specific jurisdiction over Horny Toad in South Dakota for purposes of this case.

Nau Holdings does sell goods bearing the complained-of NAU marks, and plaintiff has alleged that such goods have been sold in South Dakota. Accordingly, the Court must utilize the five-factor test reiterated in Steinbuch to determine if Nau Holdings' contacts are sufficient to warrant the exercise of specific jurisdiction over Nau Holdings in South Dakota. Those five factors, once again, are: "1) the nature and quality of the defendant's contacts with the forum state; 2) the quantity of such contacts; 3) the relation of the cause of action to the contacts; 4) the interests of the forum state in providing a forum for its residents; and 5) the convenience of the parties." Steinbuch, 518 F.3d at 586. The first three factors are of primary importance. Id.

Plaintiff identifies just one contact between Nau Holdings and South Dakota, a website transaction that occurred only three days before plaintiff filed this lawsuit. Of critical importance is the fact that this contact is not identified in plaintiff's complaint. Rather, plaintiff's allegation of this transaction originates from a statement in defendant's brief. Docket #24 at 5. This does not satisfy the burden plaintiff faces at this juncture,

which is to "state sufficient facts *in the complaint*" to support an inference that defendants are subject to jurisdiction in South Dakota. Dever, 380 F.3d at 1072 (emphasis added). Plaintiff's complaint contains nothing more than conclusory allegations regarding jurisdiction over Nau Holdings, and those allegations are unsupported by facts. Consequently, with respect to defendants' motion to dismiss, plaintiff's complaint is deficient, and does not comply with the requirements of Dever.

Defendants conducted an investigation into the lone contact identified by plaintiff. Three days before this lawsuit was filed, John Doe,[1] the president of a company based outside of South Dakota that offers "competitive intelligence" through "blind inquiries," instructed a family member, who lives in South Dakota, to purchase two shirts from Nau Holdings' website, nau.com. Docket #42 at ¶ 2-4. The items were shipped outside of South Dakota, but were paid for by a South Dakota resident. Id. Defendants characterize this transaction as "suspicious," but the Court need not address that allegation because analysis of the five-factor minimum contacts test resolves clearly in favor of defendants.

First, the Court must evaluate "the nature and quality" of defendants' contacts with South Dakota. The nature of this lone transaction is questionable, and the quality is poor. Notably, goods bearing the complained-of NAU marks never even made their way into South Dakota as a result of this transaction, thus raising the question of whether or not

---

[1] Defendants' filed information relating to their investigation of this transaction under seal in order to protect the privacy interests of those identified, who are neither parties to this action nor employed by parties to this action. See Docket #41.

11

plaintiff has suffered any harm as a result of the sale. This factor weighs heavily in favor of defendants.

Second, the Court must address the quantity of defendants' contacts in the forum. Giving plaintiff the benefit of the doubt with respect to the identified transaction, a single sale to a South Dakota resident, wherein the allegedly injurious goods never even crossed South Dakota's borders, does not constitute a quantity of contacts sufficient to confer jurisdiction upon Nau Holdings in this forum. See Iowa Elec. Light and Power Co. v. Atlas Corp., 603 F.2d 1301, 1303 (8th Cir. 1979) ("Merely entering into a contract with a forum resident does not provide the requisite contacts between a [nonresident] and the forum state."). This factor also weighs heavily in favor of defendants.

The third factor requires the Court to evaluate "the relation of the cause of action to the contacts." Again, this factor weighs in favor of defendants. The South Dakota contact alleged by plaintiff consists of a person who purchased goods bearing the complained-of NAU marks, but those goods never entered into South Dakota. As a result, there really is no relationship between the cause of action and the contact. Had the goods actually been delivered into South Dakota, perhaps resolution of this factor would be different. But the Court does not operate in hypotheticals, and under the facts of this case, this factor supports defendants.

These three factors are of primary importance when resolving the minimum contacts question, and because all three weigh so heavily in favor of defendants, the Court

need not address the remaining two factors. Plaintiff has alleged a single questionable contact in South Dakota; that allegation does not appear in plaintiff's complaint; and because the allegedly injurious goods never entered into South Dakota, plaintiff arguably has alleged no contacts whatsoever. Under the totality of these circumstances, the Court finds that Nau Holdings does not have sufficient contacts in South Dakota to warrant the exercise of specific jurisdiction.

Plaintiff's remaining arguments may be addressed summarily. First, plaintiff suggests that Nau Holdings' website, which allows for shipment of NAU-branded goods into South Dakota, is sufficient to confer specific jurisdiction. The Court does not agree. It is true that Nau Holdings' website allows for goods to be purchased and then shipped into South Dakota. However, the exercise of specific jurisdiction requires defendants to have "purposely directed" their activities toward South Dakota, and as an Iowa district court noted in a case presenting similar facts, such a website "is arguably no more directed at [South Dakota] than at Uzbekistan." Lindgren v. GDT, LLC, 312 F.Supp.2d 1125, 1131 (S.D. Iowa 2004). The Iowa court concluded that, as such a website could be accessed anywhere, including South Dakota, "its existence does not demonstrate an intent to purposefully target [South Dakota]." Id. See also Burke v. Roughrider, Inc., 507 F.Supp.2d 1040, 1044 (D.S.D. 2007) ("[M]ere solicitation within a state does not alone render the foreign corporation vendor amenable to suit within the state."); Bell Paper Box, Inc. v. Trans Western Polymers, Inc., 53 F.3d 920, 922 (8th Cir. 1995) (citations omitted) ("[F]oreseeability

13

[of an impact within the forum] alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause."). Nau Holdings' website alone is not enough to justify the exercise of personal jurisdiction over the company.

Finally, plaintiffs argue that the "effects test" from Calder v. Jones, 465 U.S. 783 (1984), should be invoked. The Court does not agree. The Eighth Circuit has clearly refused to abandon the traditional minimum contacts test when relying on Calder. See Lindgren, 312 F.Supp.2d at 1132 (citing Dakota Industries v. Dakota Sportswear, Inc., 946 F.2d 1384, 1391 (8th Cir. 1991)). Because defendants do not have sufficient contacts in South Dakota, as discussed above, there is no basis to invoke Calder.

### D. Jurisdictional Discovery

"When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." Dever, 327 F.3d at 1074 (citations omitted). "Numerous cases hold that district courts have the discretion to deny jurisdictional discovery when a plaintiff has failed to make a prima facie case of jurisdiction." Osborn & Barr Communications, Inc. v EMC Corp., 2008 WL 341664 (E.D. Mo. 2008) (citing cases from various jurisdictions). On this authority, and due to the fact that plaintiff has failed to make a prima facie case of jurisdiction and has offered nothing more than conclusory allegations regarding defendants' contacts, unsupported by facts, the Court shall deny plaintiff's request for jurisdictional discovery.

14

## CONCLUSION

Based upon the foregoing discussion, it is hereby

ORDERED that defendants' motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) (Docket #7) is granted.

IT IS FURTHER ORDERED that plaintiff's request for jurisdictional discovery is denied.

Dated this 23rd day of April, 2009.

BY THE COURT:

RICHARD H. BATTEY
UNITED STATES DISTRICT JUDGE